TODD BLANCHE
Attorney General

JESUS A. OSETE
Acting Assistant Attorney General
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Telephone: (202) 304-8447
barry.arrington@usdoj.gov

BILAL A. ESSAYLI
First Assistant United States Attorney
JULIE A. HAMILL (Cal. Bar No. 272742)
Assistant United States Attorney
United States Attorney's Office
300 North Los Angeles Street, Suite 7516
Los Angeles, California 90012
Telephone: (213) 894-2464
julie.hamill@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA
*Additional counsel listed on following page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF GLENDALE, CALIFORNIA<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

R. JONAS GEISSLER
Deputy Assistant Attorney General

BARRY K. ARRINGTON (TX No. 24129555)
Chief, Second Amendment Section

KEITH W. GAINES (CA No. 360740)
STEPHEN D. STAMBOULIEH (MS No. 102784)
Trial Attorneys
Second Amendment Section
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Telephone: (202) 304-8447

Attorneys for Plaintiff
UNITED STATES OF AMERICA

Plaintiff, the United States of America, submits the following Complaint against Defendant City of Glendale (Glendale or the City).

## INTRODUCTION

1. The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. Const. amend. II.

2. The Second Amendment codifies a pre-existing right to keep and bear arms. *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) ("[I]t has always been widely understood that the Second Amendment . . . codified a *pre-existing* right.").

3. "[T]he right to keep and bear arms [is] among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010).

4. The Second Amendment protects "the right of Americans to carry arms for self-defense as they go about their daily lives." *Wolford v. Lopez*, 609 U.S. 185, 191 (2026).

5. The Second Amendment prohibits cities and states from infringing the "general right to publicly carry arms for self-defense." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 31 (2022).

6. In *Bruen*, the Supreme Court held that "may-issue" licensing schemes violate the Second Amendment because there is no tradition of "broadly prohibiting the public carry of commonly used firearms for self-defense." *Bruen*, 597 U.S. at 38. Nor is there a tradition of "limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id*.

7. The Court stated that "shall-issue" licensing schemes with "narrow, objective, and definite standards" that do not "prevent 'law-abiding, responsible citizens' from exercising" their Second Amendment rights may be constitutional.

*Id.* at 38 n.9 (quoting *Heller*, 554 U.S. at 635). Yet even "shall-issue" schemes are unconstitutional if "put toward abusive ends." *Id.* The Court specifically stated that charging "exorbitant fees" is an abusive licensing practice. *Id.*

8. The City employs just such an abusive licensing scheme. An applicant for a license to carry a concealed firearm in the City must pay an outrageous $1,078.00 application fee. The City also mandates additional fees, including fingerprinting, training, and a psychological examination. Altogether, total fees and costs for an initial application can be as much as $2,000.

9. The City's law enforcement officers are charged with enforcing its abusive licensing scheme and are doing so. Such unconstitutional conduct is subject to injunction pursuant to 34 U.S.C. § 12601 (Section 12601). The United States brings this action to vindicate the constitutional rights of the law-abiding citizens of Glendale.

**PARTIES**

10. Plaintiff is the United States of America.

11. Glendale is a municipal corporation within Los Angeles County, California.

**JURISDICTION AND VENUE**

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345.

13. The Court has authority to grant the remedies Plaintiff seeks pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 34 U.S.C. § 12601. And the United States is authorized to initiate this action against Defendant under that Act.

14. The declaratory and injunctive relief that the United States seeks is authorized by 34 U.S.C. § 12601(b) and 28 U.S.C. §§ 2201 and 2202.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred therein.

## GENERAL ALLEGATIONS

### I. Glendale's Abusive Permitting Scheme.

#### A. *Regulatory Background.*

16. For purposes of this Complaint: "CCW" shall have the meaning set forth in Cal. Penal Code § 16360. "CCW License" means a license issued or renewed pursuant to the City's licensing regime. "CCW Applicant" means a person who has submitted an application for issuance or renewal of a CCW License.

17. California state law sets a baseline for issuing CCW Licenses. *See* Cal. Pen. Code §§ 25300–26406. Baseline requirements include (1) being at least 21 years old; (2) completing an approved training course; (3) designating a firearm "for which the license will be issued"; and (4) not being a "disqualified person," such as a felon, drug abuser, or subject to a restraining order. *See* §§ 26155, 26202.

18. If a CCW Applicant satisfies the above requirements, he or she may then apply to the Glendale Police Department (Glendale PD) which "shall issue" the license accordingly. § 26155(a), (a)(3).

#### B. *Application Process.*

19. The application process begins with completing an online application for a CCW License. *See* Glendale Police Dep't Pol'y Manual, Policy 208.4.1.[1]

[1] The Glendale Police Department website directs the public to the "License to Carry Firearm Policy" at the following URL: https://permitium-downloads.s3.us-east-1.amazonaws.com/GlendalePD/GlendalePD_CCW_Policy.pdf [https://perma.cc/D9G5-6QXF]. That policy is different in some respects from the policy that appears on the City's homepage here: https://www.glendaleca.gov/government/departments/police-department/transparency/policy-manual [https://perma.cc/TK4M-8EWN]. For

[Footnote continued on next page]

20. Glendale PD admits that its CCW application process is "a long, tedious, and meticulous process" and "[t]here are corresponding costs per step as the application moves forward." *See General Information*, Glendale Police Dep't Concealed Carry Weapons License, https://glendalepdca.permitium.com/ccw/start [https://perma.cc/Z3AV-KDJE] (last visited October 5, 2026).

21. The City's application goes on to describe the numerous steps to obtain a CCW License. Those steps include:

a) Completion of the online application;

b) Payment of applicable fees;

c) Age verification;

d) Residency verification;

e) Fingerprinting through Live Scan;

f) Three reference checks;

g) CCW Applicant interview;

h) Review of publicly available information, including social media posts;

i) Military status determination;

j) Initial CCW application determination;

k) Successful completion of psychological evaluation;

l) Successful completion of a firearms safety course and range qualification.

m) Final approval or denial of the CCW application;

n) If approved, final payment; and

o) Issuance of CCW License.

---

purposes of this Complaint, Plaintiff has assumed that the Glendale Police Department enforces the policies set forth in the policy manual to which it directs the public (i.e., the policy located at the Permitium website).

22. Glendale PD requires a 16-hour training course and range qualification for initial CCW Applicants and an eight-hour training course and range qualification for renewal CCW Applicants. *Id.*

23. Glendale PD requires a fee for initial applicants of $1,078.00. Half of the fee is due on submission of the application, and the other half is due after approval. *Id.*

24. Glendale PD requires a fee for renewal applicants of $826.00. Half of the fee is due on submission of the application, and the other half is due after approval. *Id.*

25. Glendale PD mandates additional fees such as "LiveScan/Fingerprinting (Standard $93.00 State DOJ Fee + Rolling Fees that Vary by Provider); Required Training/Safety Class & Range Qualification (Vendor Fees Vary ~ $300-$435); Psych Evaluation (Provider Fee ~ $500)." *Id.*

26. Renewal applicants pay an additional and separate "$52.00 DOJ fee." *Id.*

27. When all of the fees and costs are aggregated, the total cost of obtaining an initial CCW application is approximately $2,000. This amount does not include additional provider "Rolling Fees" for fingerprinting.[2]

28. The total cost for a renewal application is approximately $1,300. Renewed licenses in Glendale are valid for only two years. Thus, the approximately $1,300 fee must be paid every two years indefinitely.[3] This amount does not include

---

[2] The "rolling fee" is the fee that the fingerprinting service charges for performing the taking of fingerprints.

[3] California enacted Bill AB 1948, which states that "a license issued pursuant to Section 26150 or 26155 is valid for any period of time not to exceed three years from the date of the license." However, as of the date of filing of this Complaint, Defendants have not stated whether its licenses will be valid for another year after AB 1948 is effective on January 1, 2027.

additional provider "Rolling Fees" for fingerprinting or the fees associated with the Live Scan requirement effective September 1, 2026. It also assumes the Glendale PD does not compel the renewal CCW Applicant to submit to a psychological evaluation under California Penal Code § 26190 (e)(2). Additional fees apply for such an evaluation.

29. In other words, Glendale charges its residents approximately $54.17 per month to exercise a fundamental constitutional right. In contrast, the Supreme Court held unconstitutional a payment of $1.50 to vote. *See Harper v. Virginia State Bd. of Elections,* 383 U.S. 663, 668 (1966) ("Wealth, like race, creed, or color, is not germane to one's ability to participate intelligently in the electoral process. Lines drawn on the basis of wealth or property, like those of race … are traditionally disfavored."). In today's dollars, that would equal about $15.65, or roughly $1.30 per month. No matter if it is $1.30 per month or $54.17 per month to exercise fundamental rights, it is still equally unconstitutional.

**II. Glendale's License Application Scheme Is Unconstitutional.**

30. In *Bruen*, the Supreme Court set forth the following test for evaluating Second Amendment claims:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

597 U.S. at 24.

31. In *Wolford*, the Court clarified step one of the *Bruen* test:

> [The analysis required in a Second Amendment case] involves two steps. First, a court must determine whether the law before it clashes with the plain text of the Amendment's language. This inquiry entails three subsidiary questions. First, does the law apply to the people—which is to say, to all members of the political community? Second, does it concern any form of Arms, *i.e.*, any weapon customarily used for offensive or defensive purposes? Third, does the law place any

> restrictions on either the keeping (*i.e.*, possession) or the bearing (*i.e.*, carrying) of arms?
>
> If a challenged law falls within the plain text of the Second Amendment, it is *presumptively unconstitutional*—which means that it may violate the preexisting right that the Amendment codified. But because that right was not in every way coterminous with the Amendment's literal language, further analysis may be needed. Specifically, the relevant government—federal, state, or local may be able to show that its challenged law did not infringe the historical understanding of the codified right.

609 U.S. at 195-96 (citations and quotation marks omitted; fourth emphasis added).

32. Thus, step one of the *Bruen* test requires a court to ask three questions:

A. Does the law apply to the people?

B. Does it concern any form of arms?

C. Does the law place any restrictions on either the possession or carrying of arms?

33. In this case, step one of the *Bruen* test is easily met. No one can reasonably dispute that: (1) the individuals subject to the burdens of Glendale's licensing scheme are citizens among "the people;" (2) Glendale's licensing scheme applies to arms; and (3) Glendale's licensing scheme places restrictions on carrying arms.

34. At *Bruen* step one, the City's licensing scheme implicates the plain text of the Second Amendment. Therefore, the scheme is presumptively unconstitutional.

35. Even though the City's licensing scheme is a putatively "shall-issue" scheme, *Bruen* footnote 9 does not save it. Even a shall-issue scheme "can be put toward abusive ends." *Bruen*, 597 U.S. at 38 n.9. Abusive licensing practices includes those that charge "exorbitant fees" because they "deny ordinary citizens their right to public carry." *Id*. The City charges, by far, the highest fees in the

nation. The City's shockingly high fees are exactly the sort of abusive licensing practice described in *Bruen* and infringe the Second Amendment.

36. Additionally, Glendale's requirement for three reference checks, review of social media, and its requirement for a psychological examination convert its shall-issue scheme into a may-issue one. For instance, a psychological examination is just the type of "constitutionally problematic" requirement because it invites "open-ended discretion[.]" *Bruen*, 597 U.S. at 79 (Kavanaugh, J., concurring).

37. A similar social media disclosure requirement in New York has already been enjoined by the Second Circuit. *See Antonyuk v. James*, 120 F.4th 941, 976 (2d Cir. 2024), *cert. denied,* 145 S. Ct. 1900 (2025) ("requiring applicants to disclose even pseudonymous account names under which they post online imposes an impermissible infringement on Second Amendment rights that is unsupported by analogues in the historical record and moreover presents serious First Amendment concerns.").

38. And residency requirements are blatantly unconstitutional and have been struck from Hawaii (*Solinsky v. Lopez*, Civil Action No. 1:26-cv-00117-JAO-RT, ECF No. 19, Stipulated Final Judgment) to New York (*Higbie v. James*, 795 F. Supp. 3d 307 (N.D.N.Y. 2025)) and even in California (*Hoffman v. Bonta*, 789 F. Supp. 3d 995, 1004 (S.D. Cal. 2025) ("The provisions barring nonresidents from applying for CCW licenses violate the Constitution.").

39. It is not necessary to anticipate and counter Defendants' *Bruen* step two arguments because a plaintiff need only plead "the factual basis" of the complaint and need not "set out a legal theory." *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). Nevertheless, Defendants will not prevail at step two.

40. At *Bruen* step two, the Court's task is to determine whether "a firearm regulation is consistent with this Nation's historical tradition." *Bruen*, 597 U.S. at

17. "A variety of sources, including scholarship, may aid this inquiry." *Wolford*, 609 U.S. at 196. The best evidence is historical analogues. *Id.* Analogues that were widely adopted and accepted are more persuasive. *Id.* A court must consider whether the proffered analogues are "relevantly similar" to the modern law. *Id.* Regarding this inquiry, the "how" and "why" questions are important. *Id.* at 197. Did the proposed analogue impose a similar restriction and was it similarly justified? *Id.*

41. Defendants will be unable to rebut the presumption of unconstitutionality by showing that Glendale's licensing scheme is consistent with the country's history and tradition of firearm regulation.

**III. There Is No History or Tradition of Preemptive Psychological Testing.**

42. Glendale PD Policy § 208.4.1(5) states that all applicants will "undergo psychological testing" as that term is defined in Cal. Pen. Code § 26190. Under state law, "if a psychological assessment on the initial application is required by the licensing authority," then applicants are "referred to a licensed psychologist acceptable to the licensing authority." Cal. Pen. Code § 26190. The statute states that psychological testing for renewal applications shall be required "only if there is compelling evidence of a public safety concern to indicate that an assessment is necessary." *Id.* However, the City's policy appears to impose a blanket requirement that all applicants for a renewal license undergo psychological testing. Glendale PD Policy §208.3(i) requires that applicants not have any psychological conditions that make them unsuitable for a CCW License.

43. *Heller*'s acknowledgment that "... nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill..."[4] offers no justification for preemptively screening everyone for some vague, undefined psychological condition that renders them

[4] *Heller*, 554 U.S. at 626.

"unsuitable" to carry a firearm. And it certainly does not shift the cost of testing or the burden of proof onto the applicant, rather, those obligations rest squarely on the party seeking to have someone declared mentally ill.

**IV. Section 12601 Authorizes Plaintiff to Bring this Action.**

44. As pertinent to this action, 34 U.S.C. § 12601(a) ("Section 12601(a)") states:

> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers . . . that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

45. Glendale is a "governmental authority," as Section 12601(a) uses the term.

46. When Glendale PD enforces these application fees, it engages in a pattern or practice of conduct by law enforcement officers that deprives persons of rights protected by the Constitution, namely the Second Amendment, in violation of Section 12601(a).

47. Glendale has enforced these policies in a manner that violates the Second Amendment. Accordingly, there is a pattern or practice of conduct by Defendant that deprives persons of rights, privileges, or immunities secured or protected by the Constitution. Therefore, Defendant is in violation of 34 U.S.C. § 12601(a).

48. 34 U.S.C. § 12601(b) states,

> Whenever the Attorney General has reasonable cause to believe that a violation of paragraph [(a)] has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice.

*Id.* (footnote omitted).

49. The United States brings this action under the authority granted by Section 12601(b) to remedy Defendant's violation of Section 12601(a).

50. The United States is also authorized to bring this action against Defendant because there is no "doubt[]" that "the United States" may "represent [its citizens] as *parens patriae*" to "enforce their [federal] rights" in court. *Massachusetts v. Mellon*, 262 U.S. 447, 485-486 (1923).

**CLAIM FOR RELIEF**
**(Violation of 34 U.S.C. § 12601(a))**

51. Plaintiff incorporates and realleges all of the allegations set forth in the previous paragraphs.

52. Defendant engaged in a pattern or practice of conduct by law enforcement officers that deprived persons of rights secured or protected by the Constitution, in violation of 34 U.S.C. § 12601(a), by enforcing the laws described herein.

53. Unless this Court enjoins Defendant and also grants the declaratory relief the United States describes below, Defendant will continue to engage in the pattern or practice of conduct that deprives law-abiding individuals of their Second Amendment rights.

**PRAYER FOR RELIEF**

WHEREFORE, the United States hereby prays that the Court grant the following relief:

A. Entry of a declaratory judgment under 28 U.S.C. § 2201(a), declaring that:

(1) Glendale is a "governmental authority" as Section 12601(a) uses that term;

(2) Officers at the Glendale Police Department are "law enforcement officers" as Section 12601(a) uses that term;

(3) When the Glendale Police Department enforces the state and municipal regulations described herein, they act as agents of (or otherwise act on behalf of) the City;

(4) When the Glendale Police Department enforces the state and municipal regulations described above, it engages in a pattern or practice of conduct by law enforcement officers; and

(5) The effect of that pattern or practice of conduct is to deprive the citizens of their rights guaranteed by the Second Amendment.

B. Entry of permanent injunctive relief under Federal Rule of Civil Procedure 65, enjoining Defendant and its agents from enforcing the excessive fees, onerous investment of an applicant's time, the psychiatric exam requirement, reference checks, social media posts, and residency requirement, including an order that:

(1) Defendant and its agents and employees refrain from engaging in any of the predicate acts forming the basis of the pattern or practice of unlawful conduct described herein;

(2) Defendant and its agents and employees adopt and implement policies and procedures to remedy the pattern or practice of unlawful conduct described herein; and

(3) Defendant adopt systems that identify and correct conduct that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

(4) Defendant and its agents and employees identify each and every person denied a CCW License by Defendant since the challenged provisions were enacted. For each such person, communicate with that person in writing in the form the United States will propose subject to court approval stating, in

substance, that Defendant may have denied the permit application on improper and unconstitutional grounds and inviting the person to reapply for their permit. Defendant and its agents and employees must also offer to return to applicants all copies of psychological examinations and social media reviews received during the application process and for any that are not returned, Defendant must destroy them and retain none absent an independent, lawful law-enforcement purpose.

C. Such other and additional relief as the interests of justice may require.

Respectfully submitted this 9th day of November 2026.

*/s/ Barry K. Arrington*
Barry Arrington
Chief
Second Amendment Section